IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD J. SCHMITT,

        Plaintiff,

        vs.                      CIVIL ACTION
                                  No. 08-3047-SAC

ELIZABETH RICE, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983 by a prisoner in state custody. Plaintiff proceeds pro se.

Defendants Werholtz, McKune, and Rice have moved to dismiss, and plaintiff filed a response. Having examined the record, the court enters the following findings and order.

**Background**

During all relevant times, plaintiff was a contract boarder incarcerated in facilities operated by the Kansas Department of Corrections. He was convicted in 2001 of four disciplinary actions involving dangerous contraband, hoarding authorized or

prescribed medication, violation of K.S.A. 21-3810[1], and attempt to escape from custody.  Following his appeal, the District Court of Leavenworth County vacated the disciplinary convictions and remanded the matter to the Kansas Department of Corrections (KDOC).

Following a second disciplinary proceeding, plaintiff was found not guilty.  Thereafter, the District Court of Leavenworth County ordered the KDOC to reimburse plaintiff for the filing fee and the $20 fine imposed by the hearing officer, ordered that the personal property plaintiff was required to ship from the facility be returned to him, absent security concerns or any other basis for its preclusion, and ordered prison personnel to "review the petitioner's custody level and exclude from consideration the original disposition of the hearing officer." (Doc. 29, Attach. 5, Journal Entry, p. 2.)

In early 2006, plaintiff completed a lengthy autobiography. After discussing this with another inmate, Larry Shingleton, plaintiff was led to believe that Shingleton's sister could determine whether a local television station would be interested in investigating any of the facts contained in the autobiography.  Eventually, plaintiff's sister paid Shingleton's sister

---

[1]K.S.A. 21-3801 *Aggravated escape from custody.*

$2,000.00 for production costs of a television interview.

The interview never took place, and plaintiff eventually came to believe that he had been defrauded. He demanded that Shingleton return the funds or schedule the interview.

On May 16, 2006, plaintiff wrote to defendant McKune and asked him to confirm or deny his approval of the interview.

On May 19, 2006, plaintiff was placed in administrative segregation. On the same day, he wrote a second letter to defendant McKune.

On June 5, 2006, plaintiff received an administrative segregation report that stated he was being segregated due to evidence that he was preparing for an escape. The report was prepared by defendant Rice and included information concerning the 2001 escape plan of which plaintiff had been found not guilty. On the same day, plaintiff wrote to defendant Rice about the fraud concerning the television interview. He also wrote to the Administrative Segregation Review Board asserting the allegations of an escape plot were false and that inmate Shingleton had defrauded him.

On June 7, 2006, plaintiff filed a special grievance with the Secretary of KDOC.

On June 30, 2006, he was transferred to the Supermax Long Term Administrative Segregation Unit at the El Dorado Correc-

tional Facility.

In August 2006, plaintiff again filed a special grievance with the Secretary alleging that KDOC personnel were covering up Shingleton's fraud, had made false statements in the administrative segregation report, and had failed to take action against Shingleton.

On October 5, 2006, plaintiff's Unit Team Manager encouraged him to attend monthly segregation reviews to discuss the reasons for his placement.

On October 16, 2006, Warden Roberts responded to plaintiff's grievance of October 3, 2006, and stated his placement in administrative segregation was a result of an investigation that suggested plaintiff was planning an escape.

In December 2006, a member of plaintiff's Unit Team recommended his release from Supermax Long Term Segregation. Plaintiff was released from segregation on January 17, 2007.

Plaintiff filed grievances and property claims between September 25, 2006, and July 2007. On July 5, 2007, he filed a grievance concerning his segregation in May 2006. Plaintiff's Unit Team responded that officials at the Lansing Correctional Facility believed he was an escape risk. The responses to plaintiff's administrative appeals stated that the grievance was not filed in a timely manner.

4

**Discussion**

Defendants seek the dismissal of this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

A court considering a motion to dismiss under Rule 12(b)(6) must accept all well-pleaded factual assertions as true but also must consider whether these assertions "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009). Bare allegations are not sufficient to support a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.")

The court must draw all reasonable inferences in favor of the non-moving party. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 20006), *cert. denied*, 549 U.S. 1209 (2007). However, a motion to dismiss will be granted unless the complaint presents sufficient "facts to state a claim to relief that is plausible on its face", *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007), and those factual assertions "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

*Failure to investigate grievances*

Plaintiff first asserts defendants McKune and Werholtz

5

failed to properly investigate or address his grievances.

A prisoner does not have a protected right to have a grievance investigated; therefore, neither the denial of a grievance nor the failure to investigate a grievance gives rise to a constitutional claim. *See Larson v. Meek*, 240 Fed. Appx. 777, 780 (10th Cir. 2009)(defendant's denial of grievances was "insufficient to establish personal participation in the alleged constitutional violations"); *Walters v. Corrections Corp. of America,* 119 Fed. Appx. 190, 191 (10th Cir. 2004)("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance"); and *Sims v. Miller,* 5 Fed. Appx. 825, 828 (10th Cir. 2001)("insofar as plaintiff contended that [prison] officials had failed to comply with the prison grievance procedures, he had failed to allege the violation of a federal constitutional right"). Therefore, plaintiff's claim that defendants failed to process or investigate his grievances does not state a ground for relief.

*Failure to investigate allegations of fraud*

Plaintiff also claims defendants McKune and Rice failed to take action after he reported that he had been defrauded by

inmate Shingleton.

Under the Eighth Amendment, prison officials must provide a prisoner with humane conditions of confinement. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). This duty encompasses "adequate food, clothing, shelter, and medical care" and requires officials to "'take reasonable measures to guarantee the safety of the inmates'", *Farmer, id.*, (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

Here, however, plaintiff complains not of any physical harm he sustained as a result of inhumane or dangerous conditions of confinement; rather, he apparently was swindled by another prisoner in a financial scheme. Plaintiff did not report any of the events to prison officials until long after the exchange took place, and the financial transaction was executed outside the prison between two other individuals. The court finds no violation of any protected right in this scenario. Plaintiff is entitled to conditions that do not expose him to "serious harm to inmate health or safety", *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001)(quoting *Farmer*, 511 U.S. at 834), but the Eighth Amendment does not require that officials intervene to correct the effects of a prisoner's error in judgment that results only in financial harm to him caused by another prisoner.

*Use of false information in segregation report*

Plaintiff alleges defendant Rice included false information in the administrative segregation report, resulting in his placement in segregated housing on June 5, 2006, under the status of "other security risk".

The administrative report in question states plaintiff was placed in segregation pending an investigation after information was received from two sources that he was planning an escape. The report cites to plaintiff's "significant history of escapes and attempted escapes" (Doc. 29, *Martinez* report, Ex. 6.) and details a history of escape planning, including an attempt in 1989 in Wisconsin; a 1994 episode in which plaintiff was found in possession of $150.00 in cash; a 2001 discovery of a home-made ladder and escape paraphernalia including clothing, gloves, and a large amount of ground pepper in plaintiff's work area; and the current information. The current investigation was described as follows:

> He has recently started running the track again. Information received from the reliable CIs was that he had again stashed tools for an escape in his work area and had enlisted the help of another inmate to have a visitor bring cash into him. He was going to hide the cash until he had $3000.00 to aid his escape. At this time the cash has not been located but the other inmate did add the visitor to his list. In his house were found reading material about evading capture by the enemy. *Id*.

Plaintiff claims, in part, that it was error to include information concerning the 2001 events because the decision entered in the District Court of Leavenworth County ruled the information could not be used as the basis for disciplinary action.

A prisoner has limited protected rights during incarceration, and a change to a prisoner's custody classification or placement in administrative segregation typically does not infringe upon a protected right. *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006)("classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause")(internal citation and punctuation omitted).

Rather, a prisoner has a liberty interest in freedom from conditions of confinement that present an "atypical and significant hardship" in the context of ordinary events of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

In the Tenth Circuit, the inquiry into whether a prisoner's assignment to administrative segregation implicates a protected interest should consider whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; [whether] the conditions of placement are

9

extreme; [whether] the placement increases the duration of confinement ... and [whether] the placement is indeterminate." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007). The inquiry is deferential, and "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco*, 473 F.3d at 1342 (citation omitted).

Here, plaintiff's transfer to administrative segregation was in response to a report that he was planning an escape and to some circumstantial evidence that supported that report. Plaintiff's claims of unpleasant conditions of confinement, including noise, odors, and lack of exercise, suggest that he was exposed to unpleasant conditions but not atypical conditions.[2] *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir.

---

[2] To the extent plaintiff sought to add claims concerning conditions of confinement in his response to defendants' motion for dismissal, those claims are dismissed. As defendants note, "[i]t is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476, 482 (D. Kan. 1996). Neither plaintiff's amended complaint nor the attachments suggests such a claim, and his explanation that he believed specific details should be withheld so that defendants could not fabricate responses or destroy evidence (Doc. 36, p. 1) is not persuasive. The record shows plaintiff included these claims in his original complaint (Doc. 1, pp. 10-12) but omitted them from his amended complaint (Doc. 7).

10

1996)(a prisoner's "transfer ... to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")(citation and internal punctuation omitted). Plaintiff does not claim that the administrative segregation placement had any impact on the duration of his confinement. Finally, while the placement in question was indeterminate, plaintiff's status was reviewed at monthly intervals, and he was released in January 2007, approximately eight months later. This period of confinement does not support a claim of a denial of due process. *See Bohanon v. Nelson*, 145 F.3d 1345 (Table) 1998 WL 174881, 1 (10th Cir. 1998)(placement in administrative segregation for several months due to concerns about security risk posed by plaintiff prisoner did not impose an atypical and significant hardship) and *Jones v. Fields*, 1996 WL 731240 at *2 (10th Cir. 1996)(fifteen-month placement in administrative segregation was not atypical and significant hardship).

To the extent plaintiff claims the use of information concerning the 2001 events was improper, the court finds no support for that claim in the record. The journal entry entered in the District Court of Leavenworth County states, in part, as follows:

The court further determines that the respondent's

[sic] should review the petitioner's custody level and exclude from consideration the original disposition of the hearing officer and instead consider that the petitioner was found not guilty. (Doc. 29 - 5.)

This language does not bar prison officials from any consideration of the circumstances; however, in any event, the court finds the reference to the 2001 events in the 2006 administrative segregation report was harmless, given that the report details other events occurring in 1989 and 1994 that support a history of escape planning. (Doc. 29 - 6.)

The court therefore concludes plaintiff's claims arising from his placement in administrative segregation must be dismissed for failure to state a claim for relief.

*Retaliation*

Plaintiff claims he was subjected to unlawful retaliation by the defendants' failure to investigate Shingleton, by the inclusion of false information in the segregation report, and by the failure to release him from segregation. He appears to assert that this occurred in response to his pursuit of legal remedies.

To establish a claim of retaliation, a plaintiff must establish "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of

12

ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000)).

The Tenth Circuit has recognized that an adverse action taken in retaliation for the filing of grievances may violate a prisoner's rights under the First Amendment. *See, e.g., Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991).

However, a prisoner alleging unlawful retaliation must "allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois,* 922 F.2d 560, 562 n. 1 (10th Cir. 1990), and must "prove that 'but for' the retaliatory motive, the incidents to which [the inmate] refers, ... would not have taken place." *Smith v. Maschner,* 899 F.2d 940, 949-50 (10th Cir. 1990).

To the extent plaintiff alleges that his successful pursuit of relief in a 2002 state habeas corpus action is the basis for the retaliation he claims occurred, the court finds he has not made an adequate showing that but for a retaliatory motive, the 2006 events involving his placement in segregation would not have taken place. These events are separated by a considerable

13

period of time, and plaintiff simply advances no plausible nexus between his 2002 state habeas corpus action and his subsequent placement in segregation in 2006.

Likewise, plaintiff's letter of May 16, 2006, alleging that defendant Shingleton defrauded him does not state any basis which could reasonably be construed as showing a motive for retaliatory conduct. First, the letter concerns a sequence of events between the two prisoners and does not implicate any prison personnel. Next, while plaintiff's segregation occurred shortly after the letter, a proximity in time, in itself, is not sufficient to show cause in a claim of retaliatory conduct. *See, e.g., Friedman v. Kennard*, 248 F. Appx., 918, 922 (10th Cir. 2007)("Standing alone...temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive....").

While the record shows that prison authorities eventually determined that the information upon which the plaintiff was placed in segregation was "misleading and misconstrues the actual facts" (Doc. 29-7), there is no evidence of a retaliatory motive.

## Conclusion

Having considered the record, the court concludes plaintiff

has failed to state a claim for relief and that defendants are entitled to dismissal upon that basis.

IT IS, THEREFORE, BY THE COURT ORDERED defendants' motion to dismiss (Doc. 32) is granted.

IT IS FURTHER ORDERED plaintiff's motions to produce (Doc. 13) and to clarify retaliation claims (Doc. 36) are denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 21st day of September, 2010.


S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge